## SIEMUND v. ENDERLIN et al.

(Circuit Court of Appeals, Second Circuit. February 10, 1914.)

### No. 191.

1. PATENTS (§ 328*)—VALIDITY—PROCESS—IMPOSSIBILITY OF PERFORMANCE—WELDING APPARATUS.

The Siemund patent, No. 967,579, claims 1, 2, and 5, for an electric welding process, specifying that the temperature of the portions of metal to be welded shall be raised, so that it shall be the same as the material employed for filling the weld, *held* void, as impossible of performance, since, if the metal on which the molten electrode is to be deposited were equally fluid, a hole would be cut through, instead of a weld.

2. PATENTS (§ 157*)—SCOPE—RECONSTRUCTION.

A patent cannot be reconstructed to meet new conditions and new facts subsequently discovered; but the patentee must abide by what he has said in his specifications and claims, and if his process so described and claimed will not work, he cannot collect tribute from a subsequent process that will work.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 229–232; Dec. Dig. § 157.*]

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity by Heinrich L. J. Siemund against Joseph Enderlin, Sr., and another, doing business as Joseph Enderlin, Jr., & Co. Decree for defendants (206 Fed. 283), and complainant appeals. Affirmed.

On appeal from a decree of the District Court of the United States for the Eastern District of New York, dismissing the bill, which is based upon claim 2 of letters patent No. 967,578 and claims 1, 2 and 5 of letters patent 967,579 granted to Heinrich L. Siemund August 16, 1910, for improvements in electric welding and repairing. The court found claim No. 2 of 967,578 invalid for lack of patentable invention and that claims 1, 2 and 5 of 967,579 were invalid "from the standpoint of the defendant's prior use."

Regarding claim 2 of No. 967,578, the appellant states in his brief that he is convinced that appellees have not used the specific arrangement defined therein and therefore he has abandoned the charge of infringement. That patent is therefore not involved in this appeal. The errors assigned as to No. 967,579 are that the court was wrong, first, in holding claims 1, 2 and 5 invalid for lack of patentable invention; second, in holding that they were invalid because of defendant's alleged prior use; and, third, in holding that they were anticipated by the patent to Kjellberg, No. 948,764.

In the view we take of the patent in suit it will not be necessary to consider the second and the third assignments of error, although we may say incidentally that we do not regard the Kjellberg patent as part of the prior art. Vacuum Co. v. Dunn, 209 Fed. 219, 126 C. C. A. 313, decided November 11, 1913.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William H. Davis and John C. Pennie, both of New York City, for appellant.

Robert W. Hardie, of New York City, for appellees.

Before LACOMBE, COXE, and WARD; Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). [1] We understand that the only question involved in this appeal is the validity of claims 1, 2 and 5 of the Siemund patent No. 967,579. Infringement is not denied if the claims be held valid and are given the broad construction contended for by the complainant.

Siemund's contribution to the art was simply carrying forward and amplifying the process of the Russians De Bernardos and Olszewski, who in 1887 received a patent for a process for joining or separating metals by the electric current directly applied, which consists in forming the voltaic arc at the desired point along the desired line on said metal by a conductor approached thereto, which constitutes one pole, while the metal constitutes the other pole. This was a distinct advance as it substituted the voltaic arc for the gas flame of a blow pipe in metal working. De Bernardos used the carbon pencil of the electric light to produce his arc, but the form and material of the conductor are stated by him not to be essential features. The De Bernardos invention went into general use for welding, repairing and cutting. Siemund's patent is for improvements over the prior art, chiefly because his process enables the workman to carry his tool into inaccessible places, like the interior of the boiler of a ship, and mend the broken parts there without overheating them and producing cracks or fissures, even if the fractures are at distant parts. It is insisted that Siemund has added two novel features to the art embodied in two principal conceptions.

First, that if the two parts are to be united into one harmonious whole the surface of the old metal must be brought into a condition of incipient melting and, secondly, that the new metal is so brought to a state of incipient melting that the end of the wire will progressively detach itself and adhere to the surface of the work with which it is to coalesce. In this way there is no running away of the metal from the weld and the structural change of the metal which results in heating to a fluid condition is avoided. So far as it is possible for laymen to understand so difficult a problem, it seems to be that Siemund's alleged improvement consists in depositing the molten metal from the end of the pencil progressively upon the surface of the work, and building up the repair part at the joint.

De Bernardos used his voltaic arc to melt the two parts to be welded and let them flow together to form a joint. Siemund, on the contrary, used the metal of the pencil which is detached and deposited upon the work to form the joint.

Coffin's patent was also an improvement on De Bernardos and is described by Expert Arendt as a process intended "to produce a fusion and commingling of the abutting ends of the objects to be welded, and to combine with this fused material such metal as may drop off of the welding pencil."

Coffin describes a process of welding two articles together by subjecting them to the action of a voltaic arc of which one pole is a metal conductor, fusing the conductor, depositing the molten metal on the joint of the two articles and reinforcing said joint by such molten metal. It is asserted by the defendants' expert Kenyon that the Siemund patent describes and claims an impossible operation, for the reason that it requires that the new metal of the electrode and the old metal of the welding surface shall be brought to the same degree of temperature and to the same molten condition at their points of contact.

The specification says:

"Thus, in the practice of my invention I take precautions to raise the temperature of the portions to be welded to the same temperature as the material employed for filling in the weld (i. e., to the welding temperature) and to substantially restrict this high welding heat to the immediate location of the weld, instead of raising the neighboring portions of the work to that temperature."

The same statement, substantially, is asserted over and over again in the specification. Referring to this condition, Mr. Kenyon says:

"Regarding the temperature of the metal being welded and the metal used for filling, it is evident that the metal leaving the electrode is molten enough to flow, and that if the metal upon which this electrode metal is to be deposited were equally fluid, a hole would be cut through instead of a weld."

[2] Of course the patent cannot be reconstructed to meet new conditions and new facts subsequently discovered. The patentee must abide by what he has said in his specification and claims. If the machine or process so described and claimed will not work he cannot collect tribute from a subsequent machine or process that will work.

We are convinced that the contention of the defendant is correct in this respect and that an electric weld cannot be made "if the temperature of the metallic electrode and that of the work is the same."

It seems to us that enough has been said to show that what Siemund did does not rise to the dignity of invention. The prior art shows all that he shows except perhaps the adaptation of the process, assuming it to be workable, to overhead welding. This required some ingenuity, but not an exercise of the inventive faculties.

The decree is affirmed with costs.